## In re Election of Supervisor of Whitpain Township. No. 2

*W. H. Rosenberry, Jr.,* for appellant.

*J. Stroud Weber,* for appellee.

*E. Arnold Forrest,* for county board of elections.

PER CURIAM, April 9, 1942.—The question for decision on this appeal is whether the county board of elections has the right to hear testimony and cumulate votes returned *Ross Rile, R. G. Rile, Ross Reihl, Ross Riles, G. Ross Rile, Ros. G. Rile, Ross M. Rile, Ross G. Reil,* as being cast for Ross G. Rile for the office of township supervisor, where paper ballots are used.

B. Frank Cassel received the nomination on both the Republican and Democratic tickets for the office of supervisor of Whitpain Township, which is composed of two election districts—the north district and the West Ambler district. As there was only one supervisor to be elected, his was the only name printed on the official ballot for township supervisor as the Republican and Democratic candidate at the municipal election held on Tuesday, November 4, 1941. Friends of Ross G. Rile, a former supervisor, conducted a sticker campaign on his behalf. Some voters used the sticker, while others wrote in the name.

After the election, the county board of elections made a return of the votes cast, and upon the petition of electors alleging fraud or error in both election districts a recount board computed the vote for supervisor. Exceptions were filed to the recount, and after

argument the court, in an opinion dated January 5, 1942, revised, corrected, and certified the vote to the county board of elections.

Thereafter, upon the petition of Ross G. Rile to the county board of elections to cumulate his vote, said board heard testimony, and on March 3, 1942, passed a resolution declaring that Ross G. Rile was elected township supervisor, having received 328 votes while B. Frank Cassel received 325 votes.

Thereupon B. Frank Cassel appealed to this court, alleging that the county board of elections had no authority to hear testimony and cumulate the vote under the Pennsylvania Election Code of June 3, 1937, P. L. 1333; that its action was contrary to law, and that the vote must be certified exactly as the names were placed on the ballot. This matter, after argument, is now before us for decision.

The testimony heard by the county board of elections discloses, and the board found, that Ross G. Rile was a sticker candidate for supervisor, and was a registered elector of Whitpain Township; that there is no other registered elector within Whitpain Township by the name of Ross Rile, R. G. Rile, Ross Reihl, Ross Riles, G. Ross Rile, Ros. G. Rile, Ross M. Rile, or Ross G. Reil; that he was the only person by the name of Rile who was a candidate for supervisor; that no other person by the name of Rile in Whitpain Township has an "R" as a prefix to his or her name: that there is no other person in the township by the name of Rile or of similar sound with the Christian name of Ross or Ros; that there is no other person in the township by the surname of Reihl, Riles, or Reil; and that Ross G. Rile has been a resident of Whitpain Township for 66 years and a supervisor of said township for 30 years.

This testimony and findings establish the identity of Ross G. Rile under the different names by clear and convincing evidence.

It is contended that the county board of elections had no authority to cumulate the Rile votes by virtue of section 1405 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, 25 PS §3155, which provides: Manner of Computing Irregular Ballots—The county board, in computing the votes cast at any primary or election, shall compute and certify votes cast on irregular ballots exactly as such names were written, stamped, affixed to the ballot by sticker, or deposited or affixed in or on receptacles for that purpose, and as they have been so returned by the election officers". It will be noted that this section applies to the computation of votes cast on "irregular ballots", which are defined under section 1101 of the code, 25 PS §3001, as ". . . the paper or other material on which a vote is cast on a *voting machine* for persons whose names do not appear on the ballot labels." (Italics supplied.) Thus, the directions of section 1405 apply only in districts where voting machines are used, and do not apply where paper ballots are used. There is no provision in the code, so far as we are able to ascertain, containing a similar provision with relation to paper ballots, so that the instant case must be decided by the law as it was prior to the enactment of the code.

In Seim's Appeal, 316 Pa. 225, and Tibby's Appeal, 30 D. & C. 245, it was held that, where the name of a candidate for office is not spelled correctly, votes cast will be counted for him where the identity of the candidate under the different names is established by clear and convincing evidence. And also, in the Contested Nomination of David A. Hutchison for School Director, 35 Montgomery Co. L. R. 293, at page 298, Judges Swartz and Miller stated:

"This seems to be the law, as generally declared and recently set forth in 9 Ruling Case Law, at page 1144, to the effect that 'generally, where the voter's intention is found it should not be defeated by the fact that the name of the candidate is mis-spelled, the wrong

initials employed, or some other or slightly different name of like or similar pronunciation has been written instead of that of the candidate actually intended to be voted for. So if the voter intended and attempted to express a certain candidate's name as he understood it, and his ballot may, by one able to read it, be given a sound which might be understood as intended to express such name, or such name as it was pronounced by any number of people, it may be counted. But if there is no such similarity of sound between the name as written on the ballot and the candidate's name, as might induce the one to be reasonably mistaken for the other, or to indicate that the written name was intended as a contraction for the candidate's name, the ballot cannot be aided by extraneous proof. A ballot may be counted which contains a candidate's surname only, though there are other persons in the borough having the same surname, it being shown that there was no other person of such name who was a candidate for the same or any other office; and so also if only the middle name of the candidate is wrong, or if the first name is abbreviated, or if the wrong initials are used.' "

It seems clear, therefore, that the votes for a candidate under different names can be cumulated where the identity of the candidate is established by clear and convincing evidence. A further question, however, is presented, whether such cumulation may be done by the county board of elections, or by the court.

Section 1223 (a) of the Pennsylvania Election Code, 25 PS §3063, provides:

"Any ballot indicating a vote for any person whose name is not printed on the ballot, by writing, stamping or sticker, shall be counted as a vote for such person . . ."

The vote is counted for the person, not for the name; and where the intent of the voter to vote for a person is manifest it should be given effect: Gegg's Election,

281 Pa. 155. This result is not affected by the provisions of section 1222 (c), which requires the election officers in returning any vote cast for any person, whose name is not printed on the ballot, to record such names exactly as they were written, stamped, or applied to the ballot by sticker. This section applies merely to the returns and prevents the local election officers from attempting to cumulate votes without knowledge or proof of the intention of the voters.

Furthermore, the Pennsylvania Election Code provides (section 302), in defining the power and duties of the county board of elections:

"(j) To receive and determine, as hereinafter provided, the sufficiency of nomination petitions, certificates and papers of candidates for county, city, borough, township, ward, school district, poor district, election offices, and local party offices required by law or by party rules to be filed with the board.

"(k) To receive from district election officers the returns of all primaries and elections, to canvass and compute the same, and to certify the results thereof to the Secretary of the Commonwealth, as may be provided by law, and to such other authorities as may be provided by law.

"(l) To publicly announce by posting at its office the results of primaries and elections for county, city, borough, township, ward, school district, poor district, election offices, and party offices, if any, and to issue certificates of election to the successful candidates for said offices. . . .

"Section 304. Regulations; Subpoenas; Witnesses; Fees.—

"(a) Each county board of elections may make regulations, not inconsistent with this act or the laws of this Commonwealth, to govern its public sessions, and may issue subpoenas, summon witnesses, compel production of books, papers, records and other evidence, and fix the time and place for hearing any mat-

ters relating to the administration and conduct of primaries and elections in the county under the provisions of this act. All subpoenas issued by the county board shall be in substantially the same form and shall have the same force and effect as subpoenas issued by the court of common pleas of such county, and, upon application, the board shall be entitled to the benefit of the process of such court if necessary to enforce any subpoena issued by them. Each member of the county board shall have the power to administer oaths and affirmations. Each person testifying before any county board shall be first duly sworn or affirmed."

In Boord et al. v. Maurer et al., 343 Pa. 309 (1941), Judge Maxey states (p. 312):

"The Election Code makes the County Board of Election more than a mere ministerial body. It clothes it with quasi-judicial functions . . ."

Therefore, as the county board of elections, under the Pennsylvania Election Code, has power to canvass and compute the vote and issue certificates of election to the successful candidates, and furthermore, is clothed with quasi-judicial functions, may summon witnesses and hear evidence relating to the administration and conduct of elections, we are of the opinion that it had the power to hear testimony as to the identity of a candidate under different names and cumulate the vote.

We conclude, therefore, that the identity of Ross G. Rile under the different names was established by clear and convincing evidence and that the county board of elections did not err in cumulating the votes and in certifying that Ross G. Rile was duly elected to the office of supervisor of Whitpain Township, Montgomery County, Pa.

### Order

And now, April 9, 1942, for the foregoing reasons, the appeal of B. Frank Cassel is hereby dismissed at the cost of appellant.